IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL L. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-1007-CFC |
| ) | |
| WARDEN DAVID PIERCE, et al., ) | |
| ) | |
| Defendants. ) | |

Michael L. Jones, State Correctional Institution-Dallas, Dallas, Pennsylvania. Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant David Pierce.

Dana Spring Monzo, Esquire, and Lindsey E. Imbrogno, Esquire, White & Williams, Wilmington, Delaware. Counsel for Defendants Jassa Gant-Major and Jennifer Krafcik.

**MEMORANDUM OPINION**

November 25, 2019
Wilmington, Delaware

*signature* **CONNOLLY, U.S. District Judge**

## I. INTRODUCTION

Plaintiff Michael L. Jones ("Plaintiff"), an inmate at SCI-Dallas, Dallas, Pennsylvania, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 3) Plaintiff was housed at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware during the relevant time-frame. Before the Court are Defendants' motions for summary judgment, opposed by Plaintiff, Defendants' motions to dismiss for failure to prosecute,[1] and Plaintiff's request for counsel. (D.I. 92, 93, 97) The summary judgment motions have been fully briefed.

## II. BACKGROUND

### A. The Complaint

The Complaint alleges that when Plaintiff was housed in solitary confinement at JTVCC, he developed a severe bacterial infection in the mouth/lip area. (D.I. 3 at 6) Plaintiff alleges that during a two and one-half year time-frame, he requested outside specialist treatment and that medical personnel insisted on treating his condition with over-the-counter medications. (*Id.*)

The Complaint alleges there were multiple treatment plan failures, and that Plaintiff was seen by an outside allergist with no follow-up and no diagnosis. (*Id.*) Plaintiff alleges another treatment plan was ordered but not implemented because Defendants Jassa Gant-Major ("Gant") and Jennifer Krafcik ("Krafcik"), both R.N.'s,

---

[1] The Court does not analyze whether dismissal is appropriate for Plaintiff's failure to prosecute given that summary judgment is appropriate on behalf of all Defendants.

1

would not have Plaintiff brought to the medical room while he was housed in solitary confinement. (*Id.*). The Complaint alleges that guards lied and told medical that Plaintiff refused treatment and that Gant and Krafcik falsified and fabricated medical records to indicate that Plaintiff refused treatment. (*Id.* at 7-8) The Complaint alleges that Gant and Krafcik told Plaintiff he would receive better treatment if he was moved from solitary confinement. (*Id.* at 8).

The Complaint also alleges that Defendant David Pierce ("Pierce"), the former JTVCC warden, classified Plaintiff as a problem inmate and placed him in solitary confinement where access to medical is hampered by actions of correctional officers. (*Id.* at 9) The Complaint alleges that Pierce knew of threats to Plaintiff's health and safety and there was a substantial risk of harm to Plaintiff. (*Id.* at 10)

Plaintiff seeks compensatory and punitive damages.

## B. Evidence of Record

Plaintiff was housed at JTVCC until his transfer to a Pennsylvania prison following the February 2017 prison uprising at JTVCC. While at JTVCC, Plaintiff was primarily housed in Security Housing Unit ("SHU"). (D.I. 95, Ex. A at 1267-1274, 1291-1341) Psychiatric progress notes describe Plaintiff as depressed, schizophrenic (paranoid-type), delusional, and angry. (*Id.* at 1000-1017) Neither Gant nor Krafcik had any say in Plaintiff's housing assignment. (D.I. 94 at Ex. C, Ex. D)

Gant provided care to Plaintiff on three specific occasions: June 18, 2015; June 30, 2015; and July 2, 2015. (D.I. 95, Ex. A at 584-585, 620) On each occasion, Plaintiff

had submitted a sick call slip, and Gant triaged and evaluated Plaintiff to determine the next steps in care. (D.I. 94, Ex. B; Ex. C)

On June 18, 2019, Plaintiff complained of bumps on his lip with pus coming out and provided a history that the condition had been present for two years. (D.I. 95 Ex. A at 585) Upon examination, Gant saw bumps, but not pus. (*Id.*) Plaintiff indicated the condition had been present for some time and Gant scheduled Plaintiff to see a medical provider. (*Id.*) Following Gant's examination, Plaintiff was seen by a physician's assistant and dentist on June 23, 2015. (*Id.*) Plaintiff again saw the physician's assistant on June 25, 2015 with the same complaints. (*Id.*) Gant was not involved in the subsequent two visits. (D.I. 94, at Ex. B)

Gant next saw Plaintiff on June 30, 2014, following his submission of a sick call slip. (*Id.*) Plaintiff presented Gant with a piece of paper and told her it was a specimen from his lip. (*Id.*) Gant offered to examine Plaintiff's lip and collect a specimen in a medically appropriate manner, but Plaintiff became angry and refused treatment. (*Id.*)

Gant last provided Plaintiff medical care on July 2, 2015. (*Id.* at Ex. A, Ex. B) Plaintiff presented with lips that appeared thick and chapped, with no pus. (*Id.*) Plaintiff refused Gant's offer to treat Plaintiff's chapped lips. (*Id.*)

Krafcik's affidavit states that she did not participate in Plaintiff's medical treatment. (*Id.* at Ex. D) Krafcik's contacts with Plaintiff's resulted from her position as a grievance nurse. (*Id.*) As a grievance nurse, Krafcik did not render medical care to inmates. (*Id.*) Her duties consisted of reviewing and handling inmates' medical grievances, and included reviewing medical grievance forms and medical records,

interviewing staff and the inmate, and determining an informal resolution. (*Id.*) Krafcik's name appears twice on Plaintiff's medical records; October 30, 2014 when Krafcik was performing system maintenance in the electronic medical record, and December 11, 2014, when she served as a grievance nurse regarding Plaintiff's care. (*Id.*) Krafcik states that she did not render any medical treatment to Plaintiff. (*Id.*)

Medical records and the affidavit of Dr. Vincent Carr ("Dr. Carr") indicate that from 2005 until 2018, medical staff treated Plaintiff's chronic lip problems both in-house and in consultation with outside specialists. (D.I. 94, Ex. E; D.I. 95, Ex. A at 380, 751-804) In 2013, Plaintiff saw an outside allergist who prescribed medication for Plaintiff's lip problems. (D.I. 95, Ex. A at 755-759) Plaintiff continued with lip inflammation and in 2014 was seen by an outside oral-maxillofacial surgeon who recommended a lip biopsy. (*Id.* at 751-52, 803, 982) Following the biopsy results, the oral-maxillofacial surgeon concluded that Plaintiff's chronic lip problems were probably due to his large metallic dental prosthesis that was irritating his lip. (*Id.* at 804) No other medical explanation was found for the condition (D.I. 94, Ex. E; D.I. 95, Ex. A at 804)

Following the oral-maxillofacial surgeon's biopsy and conclusion, Plaintiff was seen by numerous specialists including an allergist, immunologist, dermatologist, dentist, and infectious diseases physician; he was underwent additional testing including biopsies and cultures; a number of prescription medications were ordered; and he was placed on a restricted diet to rule out a gluten allergy. (D.I. 94, Ex. E; D.I. 95, Ex. A at 380, 751-804) Outside specialists could find no explanation for chronic lip inflammation other than the dental prosthesis and recommended its removal, but

4

Plaintiff did not believe the device was causing the problem and refused to have it removed. (D.I. 94, Ex. E; D.I. 95, Ex. A at 543-44)

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

Plaintiff opposes Defendants' motions for summary judgment. (D.I. 98) His opposition consists solely of argument and is not accompanied by a sworn affidavit or signed under penalty of perjury. The opposition does not cite to the record or applicable law and does not provide any supporting evidence for consideration by the Court.

Plaintiff, as the nonmoving party, cannot simply assert factually unsupported allegations to meet his burden at the summary judgment stage. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. DISCUSSION

### A. Personal Involvement

The Complaint alleges that Pierce directed Plaintiff's in solitary confinement housing assignment, failed to take "reasonable measures," and was aware of alleged misconduct when Plaintiff complained to nurses who dispensed medication about correctional officers' misconduct. (D.I. 3 at 9) Plaintiff also alleges that Pierce and correctional officers disliked him. Pierce seeks summary judgment on the grounds that there is no evidence to support a claim of deliberate indifference against him.

"[A] non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

There is no evidence of record that Pierce knew or believed prison guards were interfering with Plaintiff's medical care or that Plaintiff was not receiving medical care. Nor is there evidence of record showing Pierce's personal involvement or deliberate

7

indifference towards Plaintiff. No reasonable jury could find for Plaintiff on the claims he raises against Pierce. Summary judgment is appropriate in favor of Pierce.

### B. Medical Needs

The claims against Gant and Krafcik seem to be that they would not bring Plaintiff into the "medical room" while he was housed in solitary confinement, that they falsified or fabricated medical reports that Plaintiff refused treatment, and that they told Plaintiff better medical care would be provided were he not housed in solitary confinement. (D.I. 3 at 7-8) Gant and Krafcik move for summary on the grounds that they were not involved in Plaintiff's treatment decisions, they did not impede Plaintiff's medical care, statements made by them do not rise to the level of an Eighth Amendment violation, Plaintiff is not entitled to choose his care so long as it is adequate, and Plaintiff's medical record indicates that he has received adequate treatment for his condition.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

8

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). Also, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d at 235 (citations omitted). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107.

A prison official may, however, manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Id.* at 104-05. A delay or denial of medical treatment claim is approached differently than an adequacy of care claim. *See U.S. ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

> Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry – since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim. All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 68-9 (3d Cir. 1993); *United States v. Michener*, 152 F.2d 880, 885 (3d Cir. 1945) ("[I]t is for the jury to determine the weight to be given to each piece of evidence ... particularly where the question at issue is the credibility of the witness.").

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017).

Finally, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation).

There is no record evidence that Gant and Krafcik falsified or fabricated Plaintiff's medical records. In addition, Plaintiff's allegations that Gant and Krafcik stated that he would receive better treatment were he not housed in solitary confinement do not rise to the level of a constitutional violation. In addition, there is no record evidence that Krafcik provided medical care or treatment to Plaintiff. Krafcik held the position of a grievance nurse, and her contact with Plaintiff concerned one medical grievance he submitted. Krafcik's conduct took place during the informal grievance resolution process. Her actions as a grievance nurse do not establish deliberate indifference. Similarly, the three times that Gant saw or treated Plaintiff as part of her triage duties do not rise to the level of deliberate indifference. The medical records indicate that in each instance she triaged Plaintiff and provided him care, albeit not always to his liking.

Finally, Plaintiff's seven inch high, 1,600 page medical record is replete with consistent treatment provided for Plaintiff's medical conditions. There is no evidence of record that any individual medical service provider violated Plaintiff's constitutional rights or were deliberately indifferent to Plaintiff's serious medical needs. To the contrary, the record shows just the opposite. Medical providers made decisions to treat Plaintiff's condition and recommended removal of the dental prosthesis, but Plaintiff refused. While Plaintiff may have disagreed with the medical care provided, he had no

right to choose a specific form of medical treatment, so long as he was provided reasonable treatment. Notably, both affidavits of Dr. Moen and Dr. Carr opine that Plaintiff was provided reasonable and appropriate medical care. (D.I. 94, Ex. C, Ex. D) Other than argument, Plaintiff produced nothing to refute either physician's opinion. Nor did Plaintiff reference or discuss his voluminous medical record.

Given the treatment provided Plaintiff, the lack of evidence that prison medical staff were deliberately indifferent to Plaintiff's serious medical needs, and Drs. Moen and Carr's unrefuted opinions, summary judgment is appropriate on behalf of Gant and Krafcik.

### C. Grievances

Summary judgment is also appropriate to the extent Plaintiff sought to raise a claim against Krafcik based upon her actions as a grievance nurse. An inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). The denial of grievance appeals does not in itself give rise to a constitutional claim as Plaintiff is free to bring a civil rights claim in District Court, just as he has. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d at 729).

Here, Krafcik acted in her capacity as a grievance nurse in reviewing Plaintiff's grievance at the informal resolution stage. Summary judgment is appropriate on her behalf, to the extent Plaintiff intended to raise a "grievance" claim against her.

11

### D. Medical Negligence

Gant and Krafcik also move for summary judgment to the extent Plaintiff seeks to raise supplemental State claims for medical negligence. As discussed in the Court's July 26, 2008 Memorandum (see D.I. 80), Plaintiff failed to comply with the Delaware Health Care Negligence Insurance and Litigation Act in raising a medical negligence claim. The Act requires a party alleging medical negligence to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853. To the extent Plaintiff alleges medical negligence, at the time he filed the Complaint he was required to submit an affidavit of merit as to each defendant signed by an expert witness. 18 Del. C. § 6853(a)(1). He did not. The Court will grant the summary judgment motion on this issue.

### V. Request for Counsel

Plaintiff requests counsel on the grounds that: (1) he is unable to litigate the case due to his transfer from JTVCC to a Pennsylvania correctional facility; (2) Defendants have submitted false claims to the Court; (3) much of his personal property, including legal materials, was discarded when he was transferred; and (4) counsel would assist him in prosecuting the case. (D.I. 97) A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by

counsel.[2] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Plaintiff filed this motion after the expiration of the discovery deadline and after Defendants' filed their dispositive motions. Two days after Plaintiff filed the request for counsel, he filed his opposition to Defendants' motions for summary judgment. (D.I. 98)

---

[2]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

The Court first observes that Plaintiff's voluminous medical record leads to the conclusion that his claims do not have merit in fact. In addition, other factors do not support Plaintiff's request. Plaintiff asserts that he cannot litigate this matter because his legal documents were thrown away when he was transferred. Plaintiff sought counsel for this same reason in June 2018. (*See* D.I. 77) After Plaintiff complained that his legal documents were not transferred with him, the Court entered an order for the Clerk of Court to provide Plaintiff with copies of certain docket items and told Plaintiff to advise it, on or before August 21, 2018, if there were other documents he believed he needed to litigate the case. (*See* D.I. 80; D.I. 81) The Court docket reflects that Plaintiff made no request for further documents. Instead, he filed another request for counsel on the grounds that the case required expert testimony to state a negligence claim under Delaware law and an expert was required for his constitutional claims. (D.I. 83) The Order denying the request explained that medical negligence claims were time-barred and that no discovery had taken place to determine if an expert was necessary for Plaintiff's constitutional claims. (D.I. 86)

Discovery commenced on November 5, 2018, to be concluded by March 4, 2019. (D.I. 87) There is no indication on the docket that prior to expiration of the discovery deadline, Plaintiff sought any discovery to determine if a medical expert was necessary. The record further reflects that when Gant and Krafcik filed their motion for summary judgment, the motion included medical records of over 1,600 pages that were provided to Plaintiff via United States mail on April 4, 2019. (D.I. 95, Ex. A; D.I. 95-4 certificate of service) Plaintiff did not seek an extension of time to review the voluminous records,

and filed his opposition to the motions for summary judgment. A review of the Complaint indicates that while Plaintiff raises medical issues, the issues are not complex. Rather, they rather concern whether he was provided adequate medical treatment. Finally, the filings demonstrate Plaintiff's ability to articulate his claims and represent himself. For these reasons, the Court will deny Plaintiff's request for counsel.

## VI. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motions for summary judgment (D.I. 92, 93); (2) deny Defendants' motion to dismiss for failure to prosecute (D.I. 92, 96); and (3) deny Plaintiff's request for counsel (D.I. 97).

An appropriate Order follows.